# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OMAR AGUILERA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-cv-5488 |
| ) | |
| FREEDMAN, ANSELMO, LINDBERG & ) | Judge Robert M. Dow, Jr. |
| RAPPE, LLC, and CAPITAL ONE BANK, USA, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Freedman, Anselmo, Lindberg & Rappe, LLC ("Freedman") and Capital One Bank (USA), N.A. ("Capital One") have moved to dismiss [18] Plaintiff Omar Aguilera's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c). For the reasons stated below, Defendants' motion to dismiss [18] is granted.

## I. Background[1]

At some point prior to October 7, 2009, Plaintiff Omar Aguilera incurred more than $2,500.00 in charges and fees on his Capital One credit card and failed to pay. Capital One retained Freedman, a Chicago-based law firm, to pursue collection. On October 26, 2009, Capital One filed suit against Aguilera in the Circuit Court of Cook County, *Capital One Bank (USA), N.A., Successor in Interest to Capital One Bank v. Omar Aguilera*, Case No. 09-M1-190505, seeking $2,561.37 plus interest and costs. On February 10, 2010, the parties appeared

---

[1] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

for trial but instead reached a settlement. That agreement was memorialized in the following agreed order submitted to and entered by the court the same day: "Case dismissed with Leave to Reinstate pursuant to the following agreement: Defendant to pay $1300 in 1 installment(s) of $1300 due 2/28/10."[2]

On February 26, 2010, two days before the settlement payment was due, Aguilera's counsel (the same counsel who represents him in this case), faxed a two-page, 10-paragraph proposed "Settlement Agreement and Release" to "Stephanie." A handwritten note directed the facsimile to the attention of Barbara Nilsen, the Freedman attorney handling the case. The facsimile also included a photocopy of a check for $1,300.00 and a cover sheet indicating that Aguilera's counsel "will personally deliver [the check] on Monday, March 1, 2010." Aguilera's proposed "settlement agreement" included an obligation on Capital One's part to request that the credit reporting bureaus delete any negative record of the account (*e.g.*, the "tradeline") from Aguilera's credit file. Aguilera contends that Capital One orally agreed to remove any negative information that was being reported to the credit reporting agencies prior to the settlement in state court; however, that term is not set forth in the agreed order that was issued by the circuit court on February 10, 2010. The proposed "settlement agreement" also failed to reflect the February 28 deadline for payment, which was set forth in the agreed order.

---

[2] The agreed order indicates that Aguilera's counsel was present at the state court hearing on February 10, 2010. However, in the present suit, Aguilera maintains that neither he nor his counsel was present at the February 10 hearing. Aguilera's counsel also claimed, in both his response brief and in a recent filing in state court, that he was not aware of the February 10, 2010 agreed order until December 2010. However, a transcript from a recent state court hearing indicated that Aguilera's counsel had left a voicemail for a Freedman attorney four days after the entry of the agreed order stating that he had the order and wanted to pay the check late. Although these facts are not necessary to the disposition of the current motion, they certainly raise questions as to the representations made by Plaintiff's counsel to this Court in regard to when he became aware of the February 2010 order.

On March 10, 2010, Nilsen returned the proposed "settlement agreement" to Aguilera's counsel with several proposed revisions, including striking the provision about the credit reporting bureaus in its entirety. On March 19, 2010, Aguilera's counsel sent back another copy of his original proposal along with a check in the amount of $1300.00. The enclosed check contained a putative restrictive endorsement: "settlement pursuant to attached settlement agreement dated 2/25/10." Freedman cashed the settlement check and applied it toward Aguilera's account. Then by letter dated March 26, 2010, Nilsen rejected Aguilera's proposed "Settlement Agreement and Release" for a second time.

On August 30, 2010, Aguilera filed the instant case alleging breach of contract, conspiracy to defraud, and violations of the Fair Debt Collection Practices Act ("FDCPA"), claiming that defendants breached the "settlement agreement" by failing to have the negative account information removed from his credit file. In response, on November 16, 2010, Capital One filed a motion before the state court to enforce the agreed order and noticed it for November 29, 2010. Aguilera failed to appear.[3] On December 1, 2010, the state court judge entered an order affirming the February 10 agreed order, finding as follows:

> the terms of the settlement between the parties were those that were tendered to the court in the order of February 10, 2010 dismissing the suit; that these were the only terms of settlement agreed to by the parties; and that any subsequent attempt by [Aguilera] to impose additional terms of settlement that were not consistent with the terms of the court order dated February 10, 2010, including the terms in the release submitted by [Aguilera] to counsel for plaintiff, have no effect.

---

[3] According to Plaintiff's counsel, he was not served with a copy of the motion to enforce. It appears that Plaintiff's counsel had moved his office and failed to amend his appearance in state court to include his new mailing address.

On February 22, 2011, Aguilera filed a motion to vacate the December 1 order. The circuit court granted the motion to vacate the December 1 order due to the absence of Plaintiff's counsel at the hearing; however, in the same order, the court stated as follows:

> The order entered by this court on February 10, 2010 stands in its entirety. The order indicates that Plaintiff's Counsel and Defendant's Counsel were present. The Order states that the Case is Dismissed with Leave to Reinstate pursuant to the following agreement: Defendant is to pay $1300.00 in one installment of $1300 due 2/28/10. If defendant defaults on agreement, plaintiff may reinstate and obtain judgment for amount prayed in complaint plus statutory interest plus costs, less credits if any. There are no other terms in the trial call order of February 10, 2010. Counsel for defendant [Aguilera] has never sought to vacate or modify the order of dismissal entered on February 10, 2010. Accordingly that order stands as entered.

Aguilera then filed a motion to vacate the February 10, 2010 order, which the circuit court summarily denied on March 21, 2011. Aguilera did not appeal the state court case.

## II.    Legal Standard

The purpose of a Rule 12(b) motion to dismiss is not to decide the merits of the case. A Rule 12(b)(6) motion tests the sufficiency of the complaint, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990), while a Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction. *Long v. Shorebank Development Corp.,* 182 F.3d 548, 554 (7th Cir. 1999). In reviewing a motion to dismiss under either rule, the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Long*, 182 F.3d at 554.

To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations

4

in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. A motion seeking dismissal based on *res judicata* or collateral estoppel under Rule 12(c) is evaluated using the same standard that governs a motion to dismiss under Rule 12(b)(6). See *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

Surviving a Rule 12(b)(1) motion to dismiss is more difficult. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). Federal courts are courts of limited jurisdiction; "they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001). Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The plaintiff bears the burden of establishing that a district court has proper jurisdiction of an action. *Transit Express*, 246 F.3d at 1023. A defendant arguing that the plaintiff has not met this burden with respect to an action may move for dismissal under Rule 12(b)(1). A challenge based on the Court's lack of subject matter jurisdiction is properly brought

in a motion under Federal Rule of Civil Procedure 12(b)(1), rather than as a motion to dismiss under Rule 12(b)(6). See also Fed. R. Civ. P. 12(h)(3) (court must dismiss for lack of subject matter jurisdiction). Under Rule 12(b)(1), consideration of evidence extrinsic to the pleadings is appropriate. *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) ("the district court had not only the right, but the duty to look beyond the allegations of the complaint to determine that it had jurisdiction to hear the landowners' claim").

## III. Analysis

According to Defendants, the circuit court's February 10 order did not contemplate that a written "settlement agreement" would be entered into after the agreed order was issued. Rather, Defendants maintain that the terms of the settlement are set forth clearly in the agreed order: "Defendant [Aguilera] to pay $1300 in 1 installment(s) of $1300 due 2/28/10." Thus, Defendants contend that the instant lawsuit is an attempt to rewrite the February 10, 2010 agreed order entered by the state court and circumvent the subsequent state court orders of December 1, 2010, February 22, 2011, and March 21, 2011, which reiterated that the February 10 order stands and does not include the term urged by Plaintiff. Defendants seek dismissal of Plaintiff's complaint on several grounds.

First, Defendants argue that this Court lacks subject matter jurisdiction over the case, warranting dismissal under Rule 12(b)(1). Second, Defendants contends that the state court conclusively determined that the agreed order contained the complete terms of settlement and therefore Aguilera is estopped from collaterally attacking the underlying February 10, 2010 order or the state court's subsequent orders affirming that order. Third, Defendants argue that there was no agreement between the parties to modify or expand on the settlement terms set forth in the February 10 order and, as such, the terms of that order control. Fourth, Defendants maintain

6

that Illinois law does not recognize a claim for conspiracy between a lawyer and its client. And finally, Defendants contend that the FDCPA claim against Freedman (Count I) fails because under the "competent attorney" standard applicable to communications between a debt collector and a consumer's attorney (see *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774-775 (7th Cir. 2007)), Aguilera's counsel cannot possibly show that he was deceived by Freedman's actions in rejecting his attempt to modify the terms of the state court's agreed order. Although all of Defendants' arguments appear to have merit, the Court need only address in detail the first two.

### A. *Rooker-Feldman* Doctrine

Defendants first argue that the *Rooker-Feldman* doctrine requires Plaintiff's case to be dismissed for want of subject matter jurisdiction. The *Rooker-Feldman* doctrine "deprives federal courts of subject matter jurisdiction where a party, dissatisfied with a result in state court, sues in federal court seeking to set aside the state-court judgment and requesting a remedy for an injury caused by that judgment." *Johnson v. Orr,* 551 F.3d 564, 568 (7th Cir. 2008); see, *e.g.*, *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923). The Supreme Court has cautioned that the doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005). The doctrine does not apply to "federal actions that simply raise claims previously litigated in state court." *Id.* at 287 & n.2 (cataloguing the numerous cases in which the doctrine was mentioned "only in passing or to explain why those cases did not dictate dismissal"). Rather, state law preclusion principles determine whether the action can move

forward in the majority of cases – but "[p]reclusion, of course, is not a jurisdictional matter." *Id.* at 293. However, the doctrine remains broad enough to preclude a party from challenging an injury that is "inextricably intertwined" with a state-court judgment. *Johnson,* 551 F.3d at 568. "[T]he crucial point is whether 'the district court is in essence being called upon to review the state-court decision.'" *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir. 1993) (quoting *Feldman*, 460 U.S. at 483-84 n.16).

Plaintiff asserts state law claims for breach of contract and conspiracy and also alleges that Defendants violated Sections 1692(d), (e), and (f) of the FDCPA by depositing his check without fulfilling their alleged obligations under the agreement—*i.e.*, notifying the credit reporting agencies to remove the negative information pertaining to Plaintiff's debt. In support of this argument, Plaintiff maintains that the agreed order issued on February 10 was not a final judgment of the state court, was not binding, and did not include all of the terms of the settlement between the parties. Specifically, he argues that "the issues decided in the prior state proceeding are by no means identical with the ones presented in this action, as they concern Freedman's actions pertaining to negotiation of the settlement well after Freedman considered the matter settled and final, as well as the cashing of a check presented by Aguilera pursuant to the execution of an Agreement and Release submitted to Defendants in March 2010—and not the February 10, 2010 Agreed Order entered by the state court." Pl.'s Resp. at 8.

Plaintiff's arguments only highlight the fallacy in his position. In arguing that the February 10 order is not binding, Plaintiff essentially acknowledges that it is the February 10 order that is most immediately injuring him by preventing him from enforcing the settlement that he wants. Put another way, Plaintiff's alleged injury stems directly from the circuit court's entry of the agreed order (as well as the court's repeated refusal to vacate and, indeed, its explicit

8

reaffirmation of, the February 10 order). See *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 528 (7th Cir. 2000) (for *Rooker-Feldman* purposes, a "state court approved settlement agreement is a judgment or decision"). If Plaintiff felt that the settlement was unfair, unlawfully procured, or that it should have contained additional terms which the state court concluded *did not exist*, then he should have appealed the decision of the state court, which he has not done.[4] For their part, Defendants abided by the agreed order by voluntarily dismissing the state court case in exchange for accepting payment of $1300.

The Seventh Circuit's decision in *Kelley et al. v. Med-1 Solutions, LLC* is instructive for present purposes. In *Kelley,* the federal plaintiffs brought an FDCPA claim against debt collectors who obtained judgments against them in state court. 548 F.3d 600, 601-02 (7th Cir. 2008). The federal plaintiffs claimed that the state court wrongly awarded attorneys' fees after the debt collectors misrepresented their entitlement to such fees. *Id.* at 602. The federal plaintiffs argued that the debt collectors' alleged misrepresentations constituted a violation of the FDCPA properly within the federal court's jurisdiction. *Id.* In an attempt to avoid the effect of *Rooker-Feldman,* the plaintiffs argued that they sought "only to remedy defendants' deceptive *representations* and *requests* related to attorney fees, and not the state court judgments granting those requests." *Id.* at 604 (emphasis in original). The Seventh Circuit rejected the plaintiffs' characterization of their lawsuit, explaining that "[b]ecause defendants needed to prevail in state court in order to capitalize on the alleged fraud, the FDCPA claims that plaintiffs bring ultimately require us to evaluate the state court judgments." *Id.* at 605. Concluding further that it "could not determine that defendants' representations and requests related to attorney fees

---

[4] This Court confirmed with the circuit court that an appeal has not been filed by Aguilera, and the time for doing so has since passed.

9

violated the law without determining that the state court erred in issuing judgments granting attorney fees," the Seventh Circuit held that *Rooker-Feldman* barred jurisdiction in federal court. *Id.* at 605.

Here, in order to prevail on his allegations that Defendants acted deceptively in cashing his check, Plaintiff would need to demonstrate that the February 10 agreed order did not contain the complete terms of the parties' settlement or that the agreed order was not binding and was subject to further revision. The state court repeatedly has rejected this argument. If this Court concluded that Defendants engaged in deceptive practices in violation of the FDCPA, that conclusion would inevitably disturb the state-court judgment, which held that the agreed order included all the terms of the settlement, making Defendants' conduct in cashing the check lawful, rather than deceptive.

Plaintiff also contends that because he did not mention the February 10 order in his complaint, his claims are not subject to the *Rooker-Feldman* doctrine. However, not only does the *Rooker-Feldman* doctrine bar claims contradicting the explicit terms of the state court's order, it also bars claims that contravene a state court's implicit rulings. See also *Crestview Vill. Apts. v. United States HUD*, 383 F.3d 552, 556 (7th Cir. 2004) (noting that ruling in plaintiff's favor "would undermine the state court's implicit holding that the state action was justified"); *Shooting Point v. Cumming*, 368 F.3d 379, 384 (4th Cir. 2004) (finding that *Rooker-Feldman* barred plaintiff's claim that regulations were selectively enforced against the plaintiff, because such a finding would contravene the state court's implicit finding that the plaintiff was properly subject to the regulations). Here, the parties entered into an agreement, memorialized in an agreed order, which states that Plaintiff was to pay $1,300.00 in one installment due on February 28, 2010. Defendants dismissed the state court case and accepted the $1,300.00 that Plaintiff

delivered (albeit late). As the state court judge noted in the February 22, 2011 order, "[t]here are not other terms in the trial call order of February 10, 2010." Plaintiff now seeks to avoid the terms of the agreed order by holding Defendants to additional terms. As noted previously, "a state court approved settlement agreement is a judgment or decision" for the *Rooker-Feldman* purposes, and Plaintiff should have sought relief through the state court system if he wanted to void a state court settlement. Indeed, Plaintiff already has tried (twice) to seek relief from the circuit court, failed both times, and declined to appeal those rulings.

In sum, a finding by this Court that Defendants did, as Plaintiff alleges, breach the settlement agreement or engage in deceptive conduct in cashing Plaintiff's check would undermine the state court's explicit holding that the agreed order did not contain the additional term that Plaintiff requested after the agreed order was entered and therefore Defendants were not under any obligation to renegotiate a settlement with Plaintiff. *Crestview Vill. Apts.*, 383 F.3d at 556-57. This Court is not permitted to undo state court decisions. See, *e.g., Wright v. Tackett,* 39 F.3d 155, 157 (7th Cir. 1994) (finding *Rooker-Feldman* prohibited §§ 1983, 1985, and 1986 action alleging conspiracy to violate plaintiff's civil rights by initiating a foreclosure proceeding, as plaintiff essentially sought review of "state court's denial of his requests to intervene in the foreclosure actions"). That this suit was in part cast as a federal FDCPA case is of no consequence. See *Ritter,* 992 F.2d at 754 (citation omitted) ("It is settled that 'a plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a [federal] civil rights action.'"). Accordingly, the *Rooker-Feldman* doctrine operates as a jurisdictional bar to Plaintiff's suit in federal court.

**B.** *Res Judicata*

Even if the Court were incorrect in ruling that the *Rooker-Feldman* doctrine bars Plaintiff's claims, the claims would be barred by collateral estoppel in any event. Under Illinois law, collateral estoppel bars a party from relitigating an issue litigated in a prior proceeding if (1) the issue decided in the prior adjudication is identical with the one presented in the current action; (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. See *Brown v. City of Chicago*, 599 F.3d 772, 774 (7th Cir. 2010). All of those elements are satisfied here.

In its December 1, 2010 and February 22, 2011 orders, the state court conclusively ruled that the February 10 order dismissing the suit contained the only terms of the settlement to which the parties agreed and that any attempt to impose additional terms of settlement would have no effect. Plaintiff's claims here are premised on the notion that Defendants breached additional terms of the settlement. In order for Plaintiff to succeed on his state court claims, the Court would have to determine that the parties agreed to the additional terms and that the failure to abide by the terms was a breach. In order for Plaintiff to succeed on his federal claim, the Court would have to determine that Defendants acted deceptively in cashing Plaintiff's check and not fulfilling their obligations. As with the state law claims, any such finding would be premised on the notion that the parties agreed to the additional terms. However, the state court already resolved this issue, both in the agreed order and in subsequent orders addressing the validity of the agreed order.

Aguilera maintains that the basis for collateral estoppel no longer exists because the state court vacated its December 1, 2010 order. However, Aguilera's contention fails to tell the whole story. In the February 22, 2011 order, the court vacated the December 1, 2010 order because of Aguilera's counsel's deficient appearance form, but then reaffirmed the agreed order. In the circuit court's unequivocal words, "[t]here are no other terms in the trial call order of February 10, 2010." Thus, the February 22, 2011 order conclusively establishes that there were no additional terms to the settlement.

Under Illinois law, a settlement agreement that a state court adopts and incorporates "operates to the same extent for *res judicata* purposes as a judgment entered after a contest and is conclusive with respect to the matters which were settled by the judgment or decree." *4901 Corp.*, 220 F.3d at 529 (collecting Illinois cases). Because Capital One voluntarily dismissed the state court action pursuant to the settlement agreement, the state court dismissal order adopting that agreement is a final judgment such that it is entitled to preclusive effect. *Id.* (finding state court settlement barred the plaintiff's federal claims). Thus, Plaintiffs' claims also are barred by collateral estoppel.[5]

---

[5] It is worth mentioning two additional points, both of which further underscore fundamental weaknesses in Plaintiff's case. In their motion to dismiss, Defendants pointed out that Plaintiff's breach of contract claim also failed because the exhibits attached to the complaint established conclusively that Capital One twice rejected, rather than accepted, the additional terms sought by Plaintiff, and that the contract modification lacked consideration in any event. Plaintiff failed to address either of these contentions. An agreed order is a record of the parties' "private, contractual agreement" that "is generally binding on the parties and cannot be amended or varied without the consent of each party." *In re Marriage of Rolseth*, 907 N.E.2d 897, 900 (Ill. App. Ct. 2d Dist. 2009). Accordingly, the agreed order represented a binding contract between Capital One and Aguilera. Aguilera now contends that the parties modified the agreed order and Capital One breached that modified contract. However, as with any contract, a contract modification requires an offer, acceptance, and consideration. *Watkins v. GMAC Fin. Servs.*, 785 N.E.2d 40, 44 (Ill. App. Ct. 1st Dist. 2003). The exhibits attached to the complaint establish that Capital One never accepted the contract modification, but rather that Capital One *twice rejected* the modification.

## V. Conclusion

For these reasons, the Court grants Defendants' motion to dismiss [18] and dismisses Plaintiff's case with prejudice.

Dated: June 8, 2011    _____
                       Robert M. Dow, Jr.
                       United States District Judge

---

Clearly, there was no meeting of the minds on a contract modification. *See Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (Ill. 1991) ("An enforceable contract must include a meeting of the minds or mutual assent as to the terms of the contract."); *Kulchawik v. Durabla Mfg. Co.*, 864 N.E.2d 744, 751 (Ill. App. Ct. 1st Dist. 2007) ("A settlement agreement is binding where there is a clear offer and acceptance to compromise, and there is a meeting of the minds as to the terms of the agreement."). Because the parties did not agree to any modification of the agreed order, the terms of the agreed order control (as the circuit court repeatedly held), and Capital One complied with the terms of the agreed order by dismissing the suit against Aguilera and accepting the agreed-upon payment of $1,300.

Aguilera's breach of contract claim also fails as the purported contract modification lacks consideration. It is well-established under Illinois law that modifications to a contract must have separate, valid consideration. *In re Marriage of Rolseth*, 907 N.E.2d at 900; *Watkins*, 785 N.E.2d at 44. Pre-existing obligations are not sufficient consideration. See *Watkins*, 785 N.E.2d at 44. Under the agreed order, Aguilera was obligated to pay $1,300.00 by February 28, 2010. In order for the contract modification to be valid, Aguilera would have to offer new consideration. *Id.* However, the proposed modification failed to do so. Accordingly, Aguilera's breach of contract claim also fails for lack of consideration.